IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JEANNE GRATZL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 07 C 0867 |
| ) | |
| OFFICE OF THE CHIEF JUDGES OF ) | |
| THE 12th, 18th, 19th and 22nd ) | |
| JUDICIAL CIRCUITS, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

In her two-count Second Amended Complaint, Plaintiff Jeanne Gratzl alleges violations of the Rehabilitation Act, 29 U.S.C. § 794, *et seq.*, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12111, *et seq.*, against her former employer, the Office of the Chief Judges of the 12th, 18th, 19th, and 22nd Judicial Circuit Courts of Illinois ("Office of the Chief Judges"). Before the Court is Defendant's Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. For the following reasons, the Court grants Defendant's motion.

**BACKGROUND**

**I.     Introduction**

In July 2001, Defendant, who employs court reporters for DuPage County Courthouse, hired Jeanne Gratzl as a Court Reporting Specialist. (R. 50-1, Def.'s Rule 56.1 Stmt. Facts ¶¶ 2, 3.) Since December 2005, Ann Jorgensen has been the Chief Judge of the 18th Judicial Circuit. (*Id.* ¶ 3.) Gratzl has had a problem with incontinence since her uterus and cervix prolapsed during a pregnancy in 1989. (*Id.* ¶ 5.) Following this pregnancy, Gratzl had a partial

hysterectomy and anterior and posterior repair. (*Id.* ¶ 6.) To avoid accidents, Gratzl must get to a washroom within moments of feeling the urge to urinate. (R. 59-1, Pl.'s Rule 56.1 Stmt. Facts ¶ 2.) Prior to working for the Office of the Chief Judges, Gratzl taught court reporting at McCormick College in Elmhurst, Illinois. (*Id.* ¶ 3.) As a teacher, Gratzl was able to leave the classroom whenever it was necessary to do so. (*Id.*) After the Elmhurst campus of McCormick College closed, Gratzl began working at the DuPage County Courthouse. (*Id.*; Def.'s Stmt. Facts ¶ 2.)

## II. Court Reporters at the DuPage County Courthouse

At the DuPage County Courthouse, court reporters work in the felony criminal courtrooms, juvenile and mental health courtrooms, as well as for the grand jury. (Def.'s Stmt. Facts ¶ 12.) Court reporters electronically record the activities in the remaining courtrooms. (*Id.*) More specifically, while in a control room, court reporters watch and listen to monitors showing the activities in the courtrooms that have electronic recording. (*Id.* ¶ 13.) Each of these court reporters monitors four courtrooms at a time to ensure that the electronic scanners are properly functioning during various court proceedings. (*Id.*) After Gratzl completed her training period, she was assigned to the control room full time. (*Id.* ¶ 16.) Gratzl testified that she applied for the control room position because it would accommodate her incontinence problem. (Pl.'s Stmt. Facts ¶ 5.)

## III. Reorganization of Court Reporters

On approximately December 30, 2005, the Coordinator of Court Reporting Services for the State of Illinois issued a memorandum stating that effective January 1, 2006, the job title "Court Reporting Specialist" would be eliminated statewide, and all court reporters would

be consolidated under the title "Official Court Reporter." (Def.'s Stmt. Facts ¶ 24.) After the elimination of the title "Court Reporting Specialist," the local courts determined what duties to assign court reporters. (*Id.* ¶ 25.) The regulations governing the operation of the Court Reporting Services provide:

> Implementation of a rotational schedule by the Chief Judge is recommended. Court reporting services employees should be pooled and rotated at a regular interval as determined by the Chief Judge. The purpose of rotation is to evenly distribute work loads among courts with heavier or lighter cases or transcript volume. A rotation schedule should act to equalize transcript work loads. Such rotation shall occur on a circuit-wide or county-wide basis as determined by the Chief Judge.

(*Id.* ¶ 27.) After consulting these regulations, Chief Judge Jorgensen decided to implement a full rotation in which all court reporters would work in both the courtrooms and the control room. (*Id.* ¶ 28.)

### IV. Gratzl's Meeting with Chief Judge Jorgensen

After the reorganization of court reporters at the DuPage County Courthouse, Gratzl attended a meeting with Chief Judge Jorgensen, Court Administrator Gary Dodge, and Court Reporter Supervisor Ernie Scola on March 22, 2006. (*Id.* ¶ 29.) At that meeting, Chief Judge Jorgensen told Gratzl that she would have to go into the full rotation with the other court reporters or else she would have to resign her position with the DuPage County Courts. (*Id.*; Pl.'s Stmt. Facts ¶ 13.) After Chief Judge Jorgensen told Gratzl that she had to go into the full rotation, Gratzl informed Chief Judge Jorgensen that she could not do in-court reporting due to her incontinence. (Def.'s Stmt. Facts ¶ 30; Pl.'s Stmt. Facts ¶ 16.) This was the first time that Gratzl had conveyed to Chief Judge Jorgensen that she needed easy access to a washroom due to her incontinence. (Def.'s Stmt. Facts ¶ 30; Pl.'s Stmt. Facts ¶ 16.)

3

On March 24, 2006, Chief Judge Jorgensen sent Gratzl a letter memorializing their March 22, 2006 meeting giving Gratzl a deadline of April 14, 2006 to decide whether to participate in the full rotation or to resign her position as a court reporter. (*Id*. ¶ 35; Pl.'s Stmt. Facts ¶¶ 17-18.) In the March 24, 2006 letter, Chief Judge Jorgensen noted "[b]ecause there is only one job title for court reporters it is a natural consequence that job responsibilities should be consistent." (Def.'s Stmt. Facts ¶ 37.) Chief Judge Jorgensen stated that her goal was "to have an environment where all court reporters are managed the same." (*Id*.)

Meanwhile, Gratzl brought papers requesting medical leave with her to the March 22, 2006 meeting with Chief Judge Jorgensen. (*Id*. ¶ 33; Pl's Stmt. Facts ¶ 14.) Gratzl was scheduled for surgery for gynecological problems that were diagnosed in March 2006. (Def.'s Stmt. Facts ¶ 33.) On March 23, 2006, Chief Judge Jorgensen approved Gratzl's request for medical leave. (*Id*. ¶ 34; Pl.'s Stmt. Facts ¶ 20.) After her April 11, 2006 surgery, Gratzl's physician wanted Gratzl to void her bladder within five minutes of getting an urge to urinate to help her heal. (Def.'s Stmt. Facts ¶¶ 39, 41.) Thereafter, Gratzl requested – and was granted – an extension of her medical leave to May 25, 2006. (*Id*. ¶ 42; Pl.'s Stmt. Facts ¶ 21.)

## V.      Interactive Reasonable Accommodation Process

On May 19, 2006, Gratzl's attorney sent a letter to Chief Judge Jorgensen requesting that the court accommodate Gratzl's medical condition of incontinence by allowing her to work full time in the control room. (Def.'s Stmt. Facts ¶ 43.) Counsel's letter included a May 15, 2006 letter from Gratzl's physician stating that Gratzl had a medical condition that required her to be close to a washroom and that she needed to get to a washroom at a moment's notice. (*Id.* ¶ 44.) After Chief Judge Jorgensen received the May 19, 2006 letter, the court offered Gratzl the

4

opportunity to work in the juvenile courtrooms on a temporary basis although these courtrooms had bench trials and other proceedings similar to the other courtrooms. (*Id.* ¶ 46; R. 58-1, Pl.'s Resp. to Def.'s Stmt. Facts ¶ 46.) In a June 8, 2006 letter, Gratzl, through her attorney, did not accept the court's proposal of assigning her to the juvenile courtrooms. (*Id.* ¶ 48.) Counsel's June 8, 2006 letter also reiterated Gratzl's request that she be placed in the control room full time. (*Id.*)

On June 15, 2006, Court Administrator Dodge sent Gratzl's attorney a letter requesting more detailed information about her medical condition and its limitations. (*Id.* ¶ 49.) In that letter, Dodge stated that "we are willing to facilitate [Gratzl's] return to active duty at the earliest medically feasible date by structuring her job assignment to assign Ms. Gratzl only to courtrooms where there is a washroom adjacent to the courtroom. We are willing to work with you to explore options to meet Ms. Gratzl's needs and hope that you will work with us to insure that the essential elements of the job are fulfilled." (*Id.*) In a June 23, 2006 letter, Dodge noted that Gratzl was about to exhaust her paid leave and further reiterated that Chief Judge Jorgensen had promised Gratzl that she would only rotate through courtrooms with an adjacent washroom. (*Id.* ¶ 50.) On June 30, 2006, Gratzl's physician sent a letter to Dodge stating that Gratzl

> needs to have easy access to bathroom facilities since she does not have the capacity and control of the bladder that many other women of her age might exhibit. Her recent surgery which was performed in an area of previous surgery will be a tremendous aid; however, undue pressure and delayed voiding will prevent appropriate scar tissue formation which ultimately is necessary for healing. The bladder in her case needs to be emptied as expediently and completely as possible to prevent damage and future problems....

(*Id.* ¶ 51; Pl.'s Stmt. Facts ¶ 27.)

On July 13, 2006, Gratzl's attorney sent Dodge a letter reiterating Gratzl's request to be

placed exclusively in her prior position in the control room. (Def.'s Stmt. Facts ¶ 53.) In a July 27, 2006 letter, Gratzl's physician further elaborated on Gratzl's condition. (*Id*. ¶¶ 55-56.) In August 2006, Chief Judge Jorgensen offered Gratzl a rotation of working in five courtrooms that were closest to the washrooms and agreed not to assign Gratzl to a juvenile courtroom. (Def.'s Stmt. Facts ¶¶ 59, 62.) The newly offered rotation would be modified as Gratzl's medical condition improved. (*Id*. ¶ 64.) Based on her physician's previous advice, Gratzl found the August 2006 offer of accommodation unacceptable and rejected this offer on September 6, 2006. (*Id*. ¶¶ 65, 68.) Thereafter, Defendant contacted Gratzl's attorney and reiterated the proposed accommodation and that Chief Judge Jorgensen expected Gratzl to return to work on October 2, 2006. (*Id*. ¶¶ 70-72.) Gratzl did not return to work on October 2, 2006. (*Id*. ¶ 73.) On October 31, 2006, Defendant terminated Gratzl's employment because she had not responded to requests for specific reasons why Defendant's final offer of accommodation was incompatible with her medical condition and why she did not return to work on October 2, 2006. (*Id*. ¶ 76.)

## VI. Gratzl's EEOC Charge

On March 26, 2007, Gratzl filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging that Defendant refused to accommodate her disability in violation of the ADA. (Def.'s Stmt. Facts ¶ 4; Def.'s Ex. 10.) Gratzl further stated that after her medical leave of absence, she was ready to return to work on May 25, 2006, but that she could not return to the new position Defendant had offered her due to her disability. (*Id.*) Also, Gratzl stated that Defendant discharged her on October 31, 2006 in violation of the ADA. (*Id.*)

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper when "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P 56(c). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 127 S.Ct. 1769, 1776 (2007). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson v. Liberty Lobby*, 477 U.S. at 255 (quoting Fed R. Civ. P. 56(e)).

## ANALYSIS

Gratzl brings her failure to accommodate claim under both the Rehabilitation Act and ADA, which courts analyze under the same standards. *See Bragdon v. Abbott,* 524 U.S. 624, 638, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998) ("ADA must be construed to be consistent with regulations issued to implement the Rehabilitation Act."). "The Americans with Disabilities Act ('ADA') prohibits discrimination against 'a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.'" *Williams v. Excel Foundry & Mach., Inc.,* 489 F.3d 309, 310 (7th Cir. 2007) (quoting 42 U.S.C. § 12112(a)). To establish her failure to accommodate claim,

7

Gratzl must present evidence that: (1) she is a qualified individual with a disability as defined by the ADA; (2) Defendant was aware of her disability; and (3) Defendant failed to reasonably accommodate her disability. *EEOC v. Sears, Roebuck & Co.,* 417 F.3d 789, 797 (7th Cir. 2005).

Under the first element of her reasonable accommodation claim – that she is disabled within the meaning of the ADA – Gratzl must present evidence that: (1) she has a physical or mental impairment that substantially limits one or more major life activities; (2) there is a record of such an impairment; *or* (3) Defendant regards her as having an impairment that substantially limits one or more major life activities. *See* 42 U.S.C. § 12102(2)(A)-(C) (emphasis added); *see also Garg v. Potter,* 521 F.3d 731, 736 (7th Cir. 2008). Whether an individual is disabled within the meaning of the ADA is fact-specific. *See Toyota Motor Mfg., Ky., Inc. v. Williams,* 534 U.S. 184, 198, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002) ("That the Act defines 'disability' with 'respect to an individual,' 42 U.S.C. § 12102(2), makes clear that Congress intended the existence of a disability to be determined in such a case-by-case manner."). As the Seventh Circuit teaches, "[n]ot every medical affliction amounts to, or gives rise to, a substantial limitation on a major life activity." *Cassimy v. Board of Ed. of Rockford Pub. Sch. Dist.,* 461 F.3d 932, 936 (7th Cir. 2006).

Here, Gratzl asserts that she has a physical impairment, namely, incontinence, that substantially limits a major life activity under the first option pursuant to Section 12102(2)(A). The parties do not dispute that incontinence is a physical impairment, *see* 29 CFR § 1630.20(h), therefore, the Court turns to whether Gratzl's incontinence substantially limits one or more major life activities. Major life activities include activities that are of central importance to daily life, such as "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking,

8

breathing, learning, and working." *Cassimy,* 461 F.3d at 936; (quoting 29 C.F.R. § 1630.2(i)).

In response to Defendant's Motion for Summary Judgment, Gratzl did not expressly identify any specific major life activities. Instead, Gratzl simply argued "the plaintiff was severely restricted on a major life activity." (R. 60-1, Pl.'s Resp. Brief, at 10.) From her arguments and the legal authority in her response brief, Defendants assumed that Gratzl was arguing that her incontinence restricted the major life activity of working. *See Burnett v. LFW Inc.,* 472 F.3d 471, 484 (7th Cir. 2006). The Court agrees that Gratzl's response brief addressed her ability to work, but Gratzl's response also hinted at another major life activity. *See Workman v. Frito-Lay, Inc.,* 165 F.3d 460, 467 (6th Cir. 1999) (based on evidence presented at trial, the "jury could have decided that controlling one's bowels is a major life activity"). The Court thus directed Gratzl to file a sur-reply specifically asking her to identify which major life activities were at issue. (R. 69-1.) The Court also required Gratzl to legally and factually support her claim that her incontinence substantially limited the identified major life activities. (R. 69-1.) In her sur-reply, Gratzl identified the major life activities at issue – working and eliminating waste. The Court addresses both claims.

**I.    Major Life Activity of Working**

Under Gratzl's first argument, to qualify as disabled under the ADA, she must show that her incontinence "substantially limits" the major life activity of working. *See Toyota Motor Mfg.,* 534 U.S. at 195 (citing 42 U.S.C. § 12102(2)(A)). "Substantially limits" means that the plaintiff "is unable to perform a major life activity that the average person in the general population can perform or is significantly restricted as to the condition, manner, or duration under which the average person in the general population can perform that same major life

9

activity." *Kampmier v. Emeritus Corp.,* 472 F.3d 930, 937 (7th Cir. 2007) (citing 29 C.F.R. § 1630.2(j)(1)(i)-(ii)); *see also Maclin v. SBC Ameritech,* 520 F.3d 781, 786-87 (7th Cir. 2008). When the major life activity at issue is working, the statutory phrase "substantially limits" requires a plaintiff to establish that she is unable to work in a broad class of jobs – rather than a specific job – as compared to the average person who has comparable skills, training, and abilities. *See Toyota Motor Mfg.,* 534 U.S. at 200; *Burnett,* 472 F.3d at 484; *see also* 29 C.F.R. § 1630.2(j)(3)(i). Although quantitative vocational data addressing the number of alternative jobs in the relevant geographic area – either within the same class or across classes – is not required, Gratzl must present some evidence of the types and numbers of other jobs in the relevant geographic region from which she would be excluded because of her incontinence. *See Kupstas v. City of Greenwood,* 398 F.3d 609, 612 (7th Cir. 2005); *EEOC v. Rockwell Int'l Corp.,* 243 F.3d 1012, 1017-18 (7th Cir. 2001). Proof of the inability to perform a particular job "does not render an individual substantially limited in the major life activity of working." *Squibb v. Memorial Med. Ctr.,* 497 F.3d 775, 782 (7th Cir. 2007); *Rockwell Int'l Corp.,* 243 F.3d at 1018.

In support of her claim that she is substantially limited in the major life activity of working, Gratzl states that she "was not only disqualified from the vast majority of positions worked by court reporters, but any job that required certain types of travel or required her to remain at her work station." (R. 60-1, Pl.'s Resp. Brief at 10-11.) The remainder of Gratzl's substantial limitation argument in her response brief states: "It goes without saying that a long list of jobs could be compiled for which plaintiff was barred because of her disability: court clerk, truck driver, security guard, assembly line worker." (*Id*. at 11 n.1.) Gratzl, however, has not presented evidence supporting these assertions.

To survive summary judgment, Gratzl must present some evidence of the demographics of the relevant job market – in this case the Chicago area or more narrowly, DuPage County, Illinois. *See Rockwell Int'l Corp.,* 243 F.3d at 1018. Gratzl, however, only set forth evidence concerning limitations as a courtroom or private deposition stenographer. *See Squibb,* 497 F.3d at 782 (evidence of inability to perform a particular job "does not render an individual substantially limited in the major life activity of working."). Without any evidence regarding the job market in the Chicago area or DuPage County, Gratzl has failed "to cross the minimum threshold for demonstrating that she cannot perform a 'class of jobs.'" *Squibb,* 497 F.3d at 783. In short, Gratzl has failed to provide sufficient evidence to survive summary judgment that she suffered from a substantial limitation to the major life activity of working. *See Rockwell Int'l Corp.,* 243 F.3d at 1018.

## II. Major Life Activity of Eliminating Waste

Next, Gratzl argues that her incontinence substantially limits the major life activity of eliminating waste. *See Workman,* 165 F.3d at 467 (controlling one's bowels may be a major life activity); *EEOC v. Browning-Ferris, Inc.,* 262 F.Supp.2d 577, 584 (D. Md. 2002) (Crohn's Disease substantially limited major life activities of moving bowels and eating). The EEOC regulations interpreting the ADA define "major life activities" by listing certain functions such as "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." *See* 29 C.F.R. § 1630.2(i). Eliminating waste is not a listed example of a major life activity in the controlling regulation, and thus the question becomes whether eliminating waste should be included under the statutory rubric based on its "significance." *See Sinkler v. Midwest Prop. Mgmt. Ltd.,* 209 F.3d 678, 684 (7th Cir. 2000). "According to this

standard, [courts] consider unlisted activities in contrast to listed activities to determine whether the unlisted activity has equal "'significance.'"  *Id.*; *see also Bragdon v. Abbott,* 524 U.S. 624, 631, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998) ("major" denotes comparative importance).

Here, Gratzl does not address the "significance" of her incontinence or compare her incontinence to the regulation's listed functions, but instead cites non-controlling cases that are factually distinguishable from the case at bar. *See, e.g., Heiko v. Colombo Sav. Bank, F.S.B.,* 434 F.3d 249 (4th Cir. 2006) (due to kidney failure, plaintiff was unable to eliminate toxins from his blood); *Fiscus v. Wal-Mart Stores, Inc.,* 385 F.3d 378, 383-85 (3d Cir. 2004) (renal disease substantially limited major life activity of eliminating waste and cleansing blood); *Kammeuller v. Loomis, Fargo & Co.,* 383 F.3d 779 (8th Cir. 2004) (under Minnesota's Human Rights Act, kidney disease qualifies as a disability); *Gilbert v. Frank,* 949 F.2d 637, 641 (2d Cir. 1991) (renal failure substantially limited major life activity of caring for self).  The only controlling case Gratzl cites concerns the ability to eat, *see Lawson v. CSX Transp., Inc.,* 245 F.3d 916, 923-24 (7th Cir. 2001), after which Gratzl argues:  "Surely if eating is a major life activity, elimination of the waste resulting from eating is a major life activity." (R. 70-1, Pl.'s Sur-reply Brief, at 2.)

Gratzl's bare-boned argument does not save the day.  Whether Gratzl is disabled within the meaning of the ADA is a fact-specific inquiry. *See Toyota Motor Mfg.,* 534 U.S. at 198. Merely citing to cases in which courts have determined that waste elimination is a major life activity under the circumstances of that particular case does not address the specific issue of Gratzl's incontinence and how her incontinence "substantially limits" the major life activity of eliminating waste. *See Kampmier,* 472 F.3d at 937; 29 C.F.R. § 1630.2(j)).  Because Gratzl has

failed to develop her legal argument – especially after the Court provided Gratzl with the opportunity to develop this argument on sur-reply – Gratzl's failure to accommodate claim based on eliminating waste must fail. *See Hardrick v. City of Bolingbrook,* 522 F.3d 758, 762 (7th Cir. 2008) (cursory and undeveloped arguments are waived); *Doherty v. City of Chicago,* 75 F.3d 318, 324 (7th Cir. 1996) ("[g]iven our adversary system of litigation, it is not the role of this court to research and construct the legal arguments open to parties, especially when they are represented by counsel.") (citations omitted).

Moreover, Gratzl's argument that her incontinence substantially limits the major life activity of eliminating waste also fails because eliminating waste is a characteristic of Gratzl's incontinence and not a separate activity itself. *See Furnish v. SVI Sys., Inc.*, 270 F.3d 445, 450 (7th Cir. 2001). As the Seventh Circuit explains, the "activities that have been held to be major life activities under the ADA (*e.g.,* eating, working, reproducing) are not the impairments' characteristics – they are ***activities*** that have been impacted because of the plaintiffs' impairments." *Id.* (emphasis in original). To illustrate, Gratzl cites a Third Circuit case in which the court concluded that the plaintiff's kidney disease limited the major life activity of eliminating waste because the disease impacted plaintiff's ability to eliminate waste and cleanse blood. *See Fiscus,* 385 F.3d at 383 ("major life activities are conceptually distinct from the physical impairments that gives rise to them"). Here, Gratzl's ability to eliminate waste is a characteristic of her incontinence, and thus is not sufficiently distinct or separate from her impairment. Put differently, Gratzl is arguing that her incontinence, namely, her inability to

13

control the bodily function of urinating,[1] limits her ability to control her urination, which is a circular argument at best. *Cf. Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 473, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999). The Court therefore rejects Gratzl's argument that her incontinence substantially limits the major life activity of eliminating waste. *See Furnish,* 270 F.3d at 450.

Viewing the evidence in a light most favorable to Gratzl, she has failed to present sufficient facts creating a genuine issue of material fact that she is a qualified individual with a disability within the meaning of the ADA. As such, the Court need not address the other elements of Gratzl's failure to accommodate claim, *see Rockwell Int'l Corp.,* 243 F.3d at 1018, and grants Defendant's Motion for Summary Judgment.

## CONCLUSION

For the foregoing reasons, the Court grants Defendant's Motion for Summary Judgment.

Dated: July 22, 2008

                                        **ENTERED**

                                        _____
                                        **AMY J. ST. EVE**
                                        **United States District Court Judge**

---

[1] Merriam Webster's Collegiate Dictionary 589 (10th Ed. 1999) defines "incontinent" as "unable to retain a bodily discharge (as urine) voluntarily."